*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 06a0219p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

————————————

UNITED STATES OF AMERICA,

*Plaintiff-Appellant,*

*v.*

No. 05-1512

RICHARD DAVID ROMERO, ISRAEL SANTIAGO,

*Defendants-Appellees.*

>

Appeal from the United States District Court
for the Eastern District of Michigan at Ann Arbor.
No. 04-90025—Marianne O. Battani, District Judge.

Argued: April 21, 2006

Decided and Filed: June 30, 2006

Before: MOORE, GRIFFIN, and CUDAHY, Circuit Judges.[*]

————————————

### COUNSEL

**ARGUED:** Kathleen Moro Nesi, ASSISTANT UNITED STATES ATTORNEY, Detroit, Michigan, for Appellant. Randall C. Roberts, Ann Arbor, Michigan, Rhonda R. Brazile, FEDERAL PUBLIC DEFENDERS OFFICE, Detroit, Michigan, for Appellees. **ON BRIEF:** Kathleen Moro Nesi, ASSISTANT UNITED STATES ATTORNEY, Detroit, Michigan, for Appellant. Randall C. Roberts, Ann Arbor, Michigan, Rhonda R. Brazile, FEDERAL PUBLIC DEFENDERS OFFICE, Detroit, Michigan, for Appellees.

————————————

### OPINION

————————————

KAREN NELSON MOORE, Circuit Judge. In this interlocutory appeal, the United States appeals a decision of the district court suppressing drug evidence in the drug conspiracy trials of defendants-appellees Richard Romero and Israel Santiago. The district court concluded that probable cause did support the warrantless arrests of Romero and Santiago, but that the search that uncovered methamphetamine in Romero and Santiago's hotel room violated the Fourth Amendment and that the drug evidence would therefore be suppressed. The United States argues that the district court misapplied the law when it concluded that the search was not a valid search incident to arrest because the defendants were already restrained in handcuffs at the time of the search and could not

———————————————

[*] The Honorable Richard D. Cudahy, Circuit Judge of the United States Court of Appeals for the Seventh Circuit, sitting by designation.

reach the nightstand in which the drugs were found. In urging this court to affirm the district court's suppression of the drug evidence, the appellees argue that the officers lacked probable cause to arrest them and therefore that the methamphetamine must be excluded as the fruit of their unconstitutional arrests.

We conclude that probable cause supported the arrests of both Romero and Santiago, that Romero consented to the initial police entry into the hotel room and that the doctrine of "consent once removed" justifies the backup officers' entry into the room, and that the search of the hotel nightstand was a valid search incident to arrest. We therefore AFFIRM the district court's conclusion that there was probable cause to arrest appellees and REVERSE the district court's suppression of the drug evidence. We REMAND for further proceedings consistent with this opinion.

## I. BACKGROUND

On the weekend of June 19 and 20 of 2004, defendant-appellee Romero telephoned undercover police officer James Keiffer in Dearborn, Michigan on several occasions offering to sell him methamphetamine. Romero identified himself as "Richard, Danny's brother," who Keiffer knew from a prior drug investigation to refer to Danny Romero. Joint Appendix ("J.A.") at 112 (Keiffer Test. at 9). Keiffer agreed to buy a half-pound of methamphetamine from Romero for $8,000, and Romero stated that he would travel from New York to Detroit in order to sell Keiffer the drugs. Romero contacted Keiffer again when Romero arrived in town, and told Keiffer that he was staying in room 107 of the Howard Johnson hotel near the airport. Keiffer told Romero that he would send a runner using the code name Bubba over to the hotel to purchase the methamphetamine, but stalled the meeting until he could arrange for other Dearborn police officers to complete the transaction. Keiffer contacted Dearborn police officer Robert Price, who worked with an FBI hotel interdiction task force, and told Price about the sale that Romero had proposed during his phone calls and that Romero was in room 107 of the Howard Johnson hotel with a half-pound of methamphetamine that he intended to sell for $8,000. Price spoke with his supervisor, and they agreed that Price would assemble a team to complete the buy-bust operation. Price's fellow officer Mike McCarthy agreed to pose as Bubba in order to view and purchase the narcotics that Romero was attempting to sell. Keiffer gave Romero the number to McCarthy's undercover cell phone so that Romero could arrange the meeting, and from this point on Keiffer was no longer involved in the operation.

At about 11:00 a.m. on Monday, June 21, 2004, Romero telephoned McCarthy, asked for his code name, and instructed McCarthy to come to the Howard Johnson hotel to look at the drugs, which he referred to as "[c]rank, you know, stuff the biker[]s use." J.A. at 199 (McCarthy Test. at 8). McCarthy attempted to get Romero to meet him in the Howard Johnson parking lot and tried to stall Romero so that the police could assemble a surveillance team that could equip McCarthy with a listening device. When Romero became impatient and stated that he would leave due to the delay, McCarthy agreed to meet Romero in his hotel room, number 107.

The police had gathered additional information by the time McCarthy went to room 107 to view and purchase the methamphetamine. An El Paso Information Center ("EPIC") search of Romero's name and date of birth revealed that he had a history of drug trafficking.[1] Howard Johnson hotel records revealed that room 107 was registered to an Israel Santiago, who, like

---

[1] At the suppression hearing, Officer Price testified that the EPIC search of Romero's name and date of birth "showed he was NADDIS positive, which means he did have a history in narcotics trafficking. It showed that he had been charged with possession of 1,100 pounds of marijuana, I think about two years prior, or three, something like that." J.A. at 141 (Price Test. at 38). Price then testified that the EPIC search indicated that Romero had been convicted and sentenced. *Id.*

Romero, was from California.  An EPIC search of Santiago's name and date of birth resulted in a NADDIS positive hit for possession of methamphetamine.  J.A. at 142 (Price Test. at 39).  At this time, however, the police did not know whether Santiago was a separate person or an alias used by Romero.

The police were unable to secure a wire for McCarthy, and so they assembled an observation room in room 108 directly across the hall from room 107 where they would watch the transaction through the door's peep hole.  The officers agreed that McCarthy would put his hand on his head if he felt unsafe and needed backup.  When McCarthy knocked on the door of room 107, a man opened the door and asked McCarthy if he was Bubba.  McCarthy stated yes, and then asked if the man was Romero.  Romero said, "[y]eah," and "[c]ome on in."  J.A. at 205 (McCarthy Test. at 14).  McCarthy then stepped into the room but stopped when he saw another man, who was later identified as Santiago, sitting on the bed farther from the door and facing the door with his hands hidden.  McCarthy was uncomfortable because of the second man in the room and because McCarthy did not have a wire, and so he gave the sign to the backup police officers watching from across the hall.  The backup officers then entered the hotel room and took control of Romero.  McCarthy identified himself as a police officer to Santiago and asked him to show his hands.  Santiago refused, continuing to hide his hands, and stared at the nightstand between the two hotel beds and a few feet away from where he was sitting on the bed.  McCarthy then took control of Santiago, placing him on the floor and handcuffing him.  McCarthy informed other officers in the room that Santiago kept staring at the nightstand, and those officers opened the door of the nightstand and found a folded towel that contained plastic bags filled with a white powder later identified as methamphetamine.

Romero and Santiago were indicted on charges of conspiracy to distribute methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846, and possession with intent to distribute methamphetamine in violation of 21 U.S.C. § 841(a)(1).  Romero filed a motion to suppress the methamphetamine found in the hotel room as well as his statements made at the time of his arrest, and Santiago joined the motion.  The district court conducted an evidentiary hearing on December 2, 2004, and also requested supplemental briefings from the parties.  At a hearing on February 17, 2005, the district court concluded that the officers had probable cause to arrest Romero and Santiago but suppressed the methamphetamine because the court determined that there were no exigencies that justified the warrantless search and that it was an invalid search incident to arrest because the nightstand was not "in the proximity for somebody to grab or for the safety of the officers."  J.A. at 93-94 (Bench Op. Tr. at 13-14).  The court denied Romero's motion to suppress his statements because he was properly read his *Miranda* rights before he made his statement.  J.A. at 94-95 (Bench Op. Tr. at 14-15).  After the district court denied the government's motion for reconsideration, the United States filed a timely notice of appeal of both orders.  Romero filed a cross-appeal on the issue of probable cause to arrest, which we dismissed for lack of jurisdiction, but we noted that defendants could raise in their response to the government's appeal any alternative arguments supporting the order of suppression.  *United States v. Romero & Santiago*, No. 05-1595 (6th Cir. Aug. 2, 2005) (order dismissing cross-appeal on challenge to probable-cause determination); Appellee Romero Br. at 6, 14.

## II. ANALYSIS

### A.  Standard of Review

We review a district court's factual findings relating to a motion to suppress for clear error and its legal conclusions de novo.  *United States v. Hammond*, 351 F.3d 765, 770 (6th Cir. 2003).  We view the evidence in the light most favorable to the district court's decision.  *United States v. Navarro-Camacho*, 186 F.3d 701, 705 (6th Cir. 1999).

## B.  Probable Cause to Arrest

We begin our Fourth Amendment analysis with appellees' arguments that we should affirm the suppression of the drug evidence because the officers lacked probable cause to arrest appellees without a warrant.  "It is a well-settled principle of constitutional jurisprudence that an arrest without probable cause constitutes an unreasonable seizure in violation of the Fourth Amendment."  *Ingram v. City of Columbus*, 185 F.3d 579, 592-93 (6th Cir. 1999).  In order to determine whether or not appellees' arrests were supported by probable cause, we must determine whether "at that moment the facts and circumstances within [the arresting officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent [person] in believing that [appellees] had committed or [were] committing an offense."  *Beck v. Ohio*, 379 U.S. 89, 91 (1964). "To determine whether an officer had probable cause to arrest an individual, we examine the events leading up to the arrest, and then decide 'whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to' probable cause."  *Maryland v. Pringle*, 540 U.S. 366, 371 (2003) (quoting *Ornelas v. United States*, 517 U.S. 690, 696 (1996)).

"The substance of all the definitions of probable cause is a reasonable ground for belief of guilt."  *Brinegar v. United States*, 338 U.S. 160, 175 (1949) (internal quotation marks omitted).  "[A] reviewing court is to take into account the 'factual and practical considerations of everyday life' that would lead a reasonable person to determine that there is a reasonable probability that illegality has occurred or is about to occur."  *United States v. Strickland*, 144 F.3d 412, 415 (6th Cir. 1998) (quoting *Illinois v. Gates*, 462 U.S. 213, 231 (1983)).  When determining whether an arrest was supported by probable cause, we utilize a "totality-of-the-circumstances approach."  *United States v. Pelham*, 801 F.2d 875, 877 (6th Cir. 1986), *cert. denied*, 479 U.S. 1092 (1987) (quoting *Gates,* 462 U.S. at 230-31).  While probable cause means that "officers must show more than mere suspicion, the probable cause requirement does not require that they possess evidence sufficient to establish a prima facie case at trial, much less evidence sufficient to establish guilt beyond a reasonable doubt."  *Strickland*, 144 F.3d at 416.  However, "[t]he belief of guilt must be particularized with respect to the person to be searched or seized."  *Pringle*, 540 U.S. at 371 (citing *Ybarra v. Illinois*, 444 U.S. 85, 91 (1979)).

### 1.  Probable Cause to Arrest Romero

We now consider Romero's argument that the officers lacked probable cause to arrest him. The district court concluded that probable cause did exist to arrest both Romero and Santiago, but stated the probable cause to arrest appellees was "extremely slim" because the arresting officers did not know whom they were arresting.  J.A. at 91 (Bench Op. Tr. at 11).  The district court's finding that the officers had not yet identified Romero by the time they arrested him is erroneous. McCarthy testified that Romero had identified himself before admitting McCarthy into the hotel room, and appellees have not contested this testimony.  Upon review, we conclude that the facts and circumstances within the officers' knowledge when they arrested Romero were such that a reasonable person would believe that Romero was in possession of methamphetamine and was about to sell the narcotics to the undercover officer.  *See Beck,* 379 U.S. at 91.

At the time of Romero's arrest, the officers knew of several significant incriminating circumstances suggesting that Romero was involved in narcotics trafficking, and the totality of these factors "would lead a reasonable person to determine that there [was] a reasonable probability that illegality [had] occurred or [was] about to occur."  *Strickland*, 144 F.3d at 415.  The arresting officers knew that Romero had called the undercover officer and had offered to sell him methamphetamine, that Romero had traveled from New York to Michigan in order to make the drug sale, and that he had obtained the hotel room to serve as his home base for his drug-related trip.  The officers knew that Romero had repeatedly communicated with two undercover officers over the telephone in order to arrange the details of the drug sale, and that Romero had requested that

McCarthy come to his hotel room to view and purchase the previously discussed half-pound of methamphetamine. The officers also observed from across the hall that when McCarthy responded to the code name that Romero had established for the interested buyer of the methamphetamine, Romero invited McCarthy into his hotel room as planned to view and purchase the narcotics.

The circumstances that suggested to the officers that Romero had committed or was about to commit the illegality of the possession and sale of methamphetamine provide stronger support for probable cause than those in *Strickland*, where we determined that there was probable cause for a warrantless arrest even though the police had not witnessed any actual illegalities. *Strickland*, 144 F.3d at 417. In *Strickland*, a civilian police informant who had previously purchased drugs from the defendant telephoned the defendant to set up a meeting at particular time to purchase one ounce of cocaine from the defendant. After the defendant arrived at the agreed location and entered the informant's car, the police arrested the defendant as he exited the informant's car. Although the informant was wired in that instance, the officers arrested the defendant before they received any information from the officer who was monitoring the wire. We concluded there was probable cause to arrest the defendant because known drug dealers had identified him as a source of cocaine, an informant reported that the defendant had agreed to meet the informant at a certain time and place to sell the informant cocaine, and the officers had independently observed the defendant's arrival at the arranged location. We explained that "the corroboration of a certain amount of information provided by an informant can be sufficient to establish probable cause to arrest and search a criminal suspect. The more unusual the occurrences are that the police are able to confirm, the stronger the showing of probable cause" to support an arrest. *Id*.

Several facts and circumstances in this case provide stronger support for probable cause than in *Strickland*. Here, unlike in *Strickland*, Romero initiated the telephone contact offering to sell narcotics. Here an undercover police officer, rather than a drug dealer acting as an informant, arranged the sale with Romero over the telephone. As in *Strickland*, Romero's reception of McCarthy when he produced the code name at the specific hotel room that Romero had proposed as the site of the narcotics sale corroborated the plan for the sale of narcotics that Romero had articulated on the telephone to two undercover officers. The facts and circumstances known to the officers at the time they arrested Romero satisfy the probable-cause requirement. We affirm the district court's conclusion that the officers had probable cause to arrest Romero.

### 2. Probable Cause to Arrest Santiago

Whether the officers had probable cause to arrest Santiago is a closer question, but after careful consideration of the record, we conclude that the totality of the facts and circumstances known to the officers at the time of Santiago's arrest does support the district court's determination that the officers had probable cause to arrest Santiago. The officers knew that the hotel room was reserved under the name Israel Santiago. While the officers had not confirmed Santiago's identity when they arrested him, the fact that he was the only other person present in the hotel room and the fact that Romero had already identified himself to the officer would warrant a prudent person in those circumstances to conclude that the man sitting on the bed was indeed Santiago, the same man whose name was on the hotel room register. Because Santiago was in the contained area of the hotel room, to which the undercover officer had been invited for the purpose of viewing and purchasing a half-pound of methamphetamine, a prudent person would determine that there was a reasonable probability that Santiago had committed the crime of possession with intent to distribute a large quantity of methamphetamine, either solely or jointly with Romero. *See Strickland*, 144 F.3d at 415; *Pringle*, 540 U.S. at 372 (concluding that there was probable cause to arrest because it was an "entirely reasonable inference" that all three occupants of an automobile "had knowledge of, and exercised dominion and control over" baggies of cocaine found in the car).

Like the enclosed space of the automobile in which the individuals were arrested in *Pringle*, the relatively small and confined space of the hotel room supports the conclusion that it was reasonable for the officers to infer from the facts known to them at the time of the arrest that Santiago was involved in a common illegal-drug enterprise with Romero. *Id*. at 373. The officers had "reasonably trustworthy information" — in the form of Romero's own statements to the undercover officers that he would sell them methamphetamine in that hotel room — that led the arresting officers to believe that the hotel room had been reserved and was being utilized for the purpose of drug dealing. *Beck*, 379 U.S. at 91. It was reasonable for the officers to infer that Santiago was involved in the drug-dealing enterprise that was being conducted out of the hotel room, because drug dealing is "an enterprise to which a dealer would be unlikely to admit an innocent person with the potential to furnish evidence against him."[2] *Pringle*, 540 U.S. at 373.

In addition, Santiago's nervous, furtive behavior provides further support for a prudent person's reasonable belief that Santiago was involved with Romero in the methamphetamine-dealing enterprise. Santiago acted suspiciously when the police identified themselves to him, refusing to show his hands to the officers and instead staring intently at the nearby nightstand. When an individual responds to the approach of identified law enforcement with "deliberately furtive actions," the furtive actions, "when coupled with specific knowledge on the part of the officer relating the suspect to the evidence of crime . . . are proper factors to be considered in the decision to make an arrest." *Sibron v. New York*, 392 U.S. 40, 66-67 (1968). Under the totality of these circumstances, we affirm the district court's conclusion that the officers had probable cause to arrest Santiago.

## C. Consent to Enter the Hotel Room

The appellees' argument that the police officers' entry into the hotel room was constitutionally infirm is also unpersuasive. Appellees are correct that they had a reasonable expectation of privacy in their hotel room. *See, e.g., Hoffa v. United States*, 385 U.S. 293, 301 (1966) ("A hotel room can clearly be the object of Fourth Amendment protection as much as a home or an office."); *Johnson v. United States*, 333 U.S. 10 (1948). In this instance, however, both McCarthy and Price testified that Romero consented to McCarthy's entry into the hotel room when McCarthy arrived posing as Bubba and seeking to view and purchase the drugs. J.A. at 205 (McCarthy Test. at 14); J.A. at 146 (Price Test. at 43). Once Romero consented to McCarthy's entrance, the entry of the backup officers at McCarthy's request for assistance was lawful under the doctrine of "consent once removed." *See United States v. Pollard*, 215 F.3d 643, 648-49 (6th Cir. 2000) (quoting *United States v. Akinsanya*, 53 F.3d 852, 856 (7th Cir. 1995)). In *Pollard*, we adopted the doctrine of "consent once removed," which requires that an "undercover agent or informant 1) entered at the express invitation of someone with authority to consent; 2) at that point established the existence of probable cause to effectuate an arrest or search; 3) immediately summoned help from other officers." *Id*. at 648. In *Pollard*, the initial consent to enter was given to both a civilian informant as well as an undercover police officer. *Id*. at 646. In *United States v. Yoon*, 398 F.3d 802, 806 (6th Cir. 2005), we extended our holding in *Pollard* to apply the doctrine of "consent once removed" to a situation in which the initial consent was given only to a civilian informant.

---

[2]We emphasize that our conclusion that a prudent person would have determined that Santiago's presence within the hotel room contributed to individualized suspicion that he was involved in the drug-dealing enterprise is fact-specific. Our analysis would be different had the space involved been of a different size and nature, such as a home or a place of business. A larger and more multipurpose space would increase the likelihood that "unwitting" and innocent individuals might be present, *Pringle*, 540 U.S. at 373, and would enhance the possibility that such individuals were present for some other legitimate purpose rather than to participate in a common drug-dealing enterprise.

All three components of the doctrine of "consent once removed" were present here. As in *Pollard*, here the undercover officer entered the hotel room at the express invitation of Romero and there was probable cause to arrest both men at the time that they were seized. Upon seeing the second person in the room, whose hands were hidden from view, McCarthy immediately summoned help from the backup officers watching from across the hall. "[T]he back-up officers were acting within constitutional limits when they entered to assist [McCarthy] since no further invasion of privacy was involved once the undercover officer made the initial entry." *Pollard*, 215 F.3d at 649. The officers' entry into the hotel room did not violate the Fourth Amendment.

## D. Search Incident to Arrest

Having determined that neither the arrests of Romero and Santiago nor the officers' entry into the hotel room violated the Fourth Amendment, we now consider whether the search of the hotel nightstand was a valid search incident to arrest. The district court concluded that the search of the hotel nightstand violated the Fourth Amendment because Santiago had already been restrained by the time the officers searched the nightstand, and therefore Santiago would have been unable to reach the nightstand at the time of the search.[3]

The government is correct that this conclusion was erroneous, because the law does not require that an area be accessible to the defendant at the time of a search incident to arrest for the search to be valid. "So long as the defendant had the item within his immediate control near the time of his arrest, the item remains subject to a search incident to arrest." *Northrop v. Trippett*, 265 F.3d 372, 379 (6th Cir. 2001); *see also Thornton v. United States*, 541 U.S. 615, 623-24 (2004) (holding that the entire passenger compartment of a vehicle may be searched incident to arrest when arrestee is a "recent occupant" of the vehicle); *New York v. Belton*, 453 U.S. 454, 460 (1981) (holding that when an officer "has made a lawful custodial arrest of occupant of an automobile," the officer may "search the passenger compartment of that automobile"). We recently affirmed this rule in *United States v. Poole*, 407 F.3d 767 (6th Cir. 2005), a decision that had not yet been published at the time of the district court's determination. Under *Poole*, because the record establishes that the nightstand "would have been within [Santiago's] reach had he not been handcuffed," the seizure of the methamphetamine was "the product of a permissible search incident to arrest." *Id*. at 773. As the methamphetamine was validly obtained pursuant to a search incident to arrest, we reverse the district court's determination that the evidence must be suppressed.

## III.  CONCLUSION

Because we conclude that the police had probable cause to arrest Romero and Santiago, that the officers' entry into the hotel room was consensual, and that the methamphetamine was seized pursuant to a valid search incident to arrest, we **AFFIRM** the district court's determination that the officers had probable cause to arrest Romero and Santiago and **REVERSE** the district court's suppression of the methamphetamine. We **REMAND** for further proceedings consistent with this opinion.

---

[3]When responding to the government's request that the district court make a factual finding about the proximity of the nightstand to Santiago at the time of his arrest, the district judge stated that she could not recall testimony about distance but that the "logical conclusion" was that Santiago was close to the nightstand because "there's only so much room in between the beds in a hotel room." J.A. at 95 (Bench Op. Tr. at 15). *See also* J.A. 206 (McCarthy Test. at 15) (stating that Santiago was "[r]eal close to the nighstand," maybe "a couple of feet" away).