NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 08a0154n.06
Filed: March 18, 2008

No. 07-3402

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | ON APPEAL FROM THE |
| Plaintiff-Appellee, | ) | UNITED STATES DISTRICT |
| | ) | C O U R T   F O R   T H E |
| v. | ) | SOUTHERN DISTRICT OF |
| | ) | OHIO |
| Gregory L. Brooks, | ) | |
| | ) | **O P I N I O N** |
| Defendant-Appellant. | ) | |

BEFORE:     CLAY, McKEAGUE, Circuit Judges; BOYKO, District Judge.[*]

**McKeague, Circuit Judge.**  In this appeal, Defendant argues that the district court erred in

concluding that his arrest was supported by probable cause and denying his motion to suppress, as

fruit of the poisonous tree, incriminating statements that he made to police after receiving the

warning required by *Miranda v. Arizona*, 384 U.S. 436 (1966).  Finding no error in the district

court's decision, we **AFFIRM**.

**I.  BACKGROUND**

On October 8, 2002, Officer Matthew Beavers ("Beavers") and several other members of the

Dayton Police Department's Metropolitan Housing Authority Task Force, responded to a report of

drug and weapons activity at the Arlington Courts apartment complex.  Upon arriving at the

complex, Beavers spoke with Arlington Courts' resident site manager, Gary Haden ("Haden"), who

---

[*]The Honorable Christopher A. Boyko, United States District Judge for the Northern District
of Ohio, sitting by designation.

had called the police. At the suppression hearing, Beavers testified that he was very familiar with Haden because he had provided him with reliable information on numerous occasions in the past regarding illegal activity at the Arlington Courts complex.

Haden informed Beavers that the live-in boyfriend of the tenant residing at 128 South Alder was engaging in drug and weapons activity at the apartment. He described the boyfriend as a thin black male who went by the nickname of "Snake." After receiving this information from Haden, Beavers and the other officers proceeded to 128 South Alder where they were greeted at the door by the tenant, Alexandria Winn ("Winn"). At that time, Beavers observed a man meeting the description provided by Haden (who was later identified as Defendant) sitting on the floor with a young child. The officers explained the complaints to Winn, who then provided the officers with written consent to search the apartment.

Once inside the apartment, Beavers proceeded to search a bedroom while other officers searched other areas of the dwelling. Both Winn and Defendant—who were permitted to walk freely during the search—followed Beavers into the bedroom. Upon entering the bedroom, Beavers noticed a "banana clip" and other ammunition in plain view on a table. At that point, Beavers asked Winn and Defendant where the gun to which the ammunition went was located. Immediately following this inquiry, Beavers testified that Winn and Defendant simultaneously sat down on the mattress. This conduct made Beavers suspicious that the gun was under the bed because "they both had the same reaction at the same time as soon as I showed them that ammunition." After Winn and Defendant left the room, Beavers flipped the mattress and found a loaded AK-47 assault rifle.

Beavers presented this information to his supervisor and then handcuffed Defendant and placed him in a squad car. Defendant was then read his rights, after which he confessed to owning the AK-47.

Although Defendant was originally arrested for possessing an automatic firearm in violation of Ohio law—as a previously convicted felon—he was ultimately prosecuted by the United States for being a felon in possession of a firearm under 18 U.S.C. § 922(g)(1). Prior to trial, Defendant filed a motion to suppress his statements to Beavers on the grounds that they constituted the fruit of his unlawful arrest. The district court held that Defendant's arrest was supported by probable cause and denied the motion to suppress. Defendant proceeded to a jury trial and was convicted of the felon in possession charge. He now appeals the district court's denial of the motion to suppress.

## II. ANALYSIS

### A. Standard of Review

A district court's factual findings relating to a motion to suppress are reviewed for clear error while its legal conclusions are reviewed *de novo*. *United States v. Romero*, 452 F.3d 610, 615 (2006). The evidence relating to the suppression issue is viewed in the light most favorable to the district court's decision. *Id*.

### B. Probable Cause Discussion

The Fourth Amendment requires that all arrests be supported by probable cause. *Ingram v. City of Columbus*, 185 F.3d 579, 592-93 (6th Cir. 1999). As the Supreme Court has explained, "the probable-cause standard is a practical, nontechnical conception that deals with the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Maryland v. Pringle*, 540 U.S. 366, 370 (2003) (internal citations and quotations omitted).

While not capable of precise quantification, it is well-established that probable cause means "a reasonable ground for belief of guilt," which is certainly a lesser standard than "evidence which would justify condemnation or conviction." *Brinegar v. United States*, 338 U.S. 160, 175 (1949) (internal quotations omitted); *see also United States v. Strickland*, 144 F.3d 412, 416 (6th Cir. 1998) (stating that while probable cause requires more than mere suspicion, it does not require "evidence sufficient to establish a prima facie case at trial, much less evidence sufficient to establish guilt beyond a reasonable doubt").

When determining if a police officer had probable cause to conduct a warrantless arrest, we look to the totality of the circumstances and decide "whether the[] historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause." *Pringle*, 540 U.S. at 370 (internal quotations omitted); *see also Romero*, 452 F.3d at 616 (explaining that the totality of the circumstances test applies to probable cause determinations). Thus, the evidence available to the officer must be sufficient to lead a reasonable person to believe that the arrestee has probably committed or was about to commit a crime. *See Strickland*, 144 F.3d at 415; *see also Pringle*, 540 U.S. at 371 (indicating that probable cause must be particularized with respect to the person arrested).

In the instant case, Defendant asserts that Beavers did not have probable cause to arrest him for the unlawful possession of an automatic firearm. He argues that, at the moment of arrest, the facts known to Beavers were insufficient to establish probable cause that Defendant possessed the AK-47 found under the mattress. Additionally, Defendant asserts that Beavers did not have probable

cause to believe that the firearm was an automatic firearm of the type prohibited by Ohio law. Both of these arguments lack merit.

### 1. Probable Cause to Believe Defendant Possessed the Firearm

At the suppression hearing, Beavers indicated that he arrested Defendant for possessing an automatic firearm, which is treated as a dangerous ordnance under Ohio law. Pursuant to Ohio Revised Code § 2923.17(A), it is illegal for any person to "knowingly acquire, have, carry, or use any dangerous ordnance." A "dangerous ordnance" includes "[a]ny automatic or sawed-off firearm," Ohio Rev. Code. Ann. § 2923.11(K)(1), with an "automatic firearm" defined as:

> any firearm designed or specially adapted to fire a succession of cartridges with a single function of the trigger. "Automatic firearm" also means any semi-automatic firearm designed or specially adapted to fire more than thirty-one cartridges without reloading, other than a firearm chambering only .22 caliber short, long, or long-rifle cartridges.

Ohio Rev. Code Ann. § 2923.11(E). An individual violates this statute if he or she has either actual or constructive possession of such a firearm. *See State v. Butler*, No. 53785, 1987 WL 25720, at *3-4 (Ohio Ct. App. Dec. 3, 1987).

In our opinion, looking to the totality of the circumstances, the "historical facts, viewed from the standpoint of an objectively reasonable police officer" establish that Beavers had probable cause to arrest Defendant. *Pringle*, 540 U.S. at 370 (internal quotations omitted). When Beavers discovered the AK-47 under the mattress he already had the following information: (1) a report from the site manager—who had been a reliable source of information in the past—that a man matching Defendant's description was engaging in drug and weapons activity at 128 South Alder where he

lived with his girlfriend; (2) Defendant was the sole male inside the 128 South Alder address at the time of the search; (3) a banana clip and other ammunition was found on a bedroom table; (4) when asked where the gun to which the ammunition went to was located, Defendant and his girlfriend immediately, and rather suspiciously, sat down on the mattress under which the AK-47 was subsequently found.

Defendant argues that Beavers did not have probable cause to believe that he actually or constructively possessed the firearm. He asserts that the bedroom where the AK-47 was found belonged to his girlfriend, and there was no evidence at the time of the arrest that he had knowledge of its existence. With regard to this argument, we find the Supreme Court's decision in *Pringle* to be instructive. In *Pringle*, a police officer stopped a vehicle containing three occupants for speeding. 540 U.S. at 367-68. During a search of the vehicle, the officer located five baggies of cocaine stuffed between the back-seat armrest and the back-seat. *Id*. at 368. All three of the occupants denied owning the cocaine and the $763 in cash that was found in the glove compartment. *Id*. The officer then placed all three occupants, including Pringle, under arrest for possession of the narcotics. *Id*. After later waiving his *Miranda* rights, Pringle confessed that he owned the cocaine. *Id*. at 369. Pringle sought to suppress his confession on the grounds that it was the fruit of an illegal seizure because at the moment of the arrest the officer did not have probable cause to believe that the drugs in the car belonged to Pringle. *Id*.

The Supreme Court unanimously rejected Pringle's argument, finding that the officer had probable cause to arrest all three of the occupants for possession of the narcotics. According to the Court: "We think it an entirely reasonable inference from these facts that any or all three of the

occupants had knowledge of, and exercised dominion and control over, the cocaine. Thus, a reasonable officer could conclude that there was probable cause to believe Pringle committed the crime of possession of cocaine, either solely or jointly." *Id*. at 372.

Looking to the facts of this case, the "historical facts" known to Beavers were sufficient to establish probable cause to believe Defendant possessed the AK-47 in violation of Ohio law. Although like the drugs in *Pringle*, it was not entirely clear at the moment of arrest that the gun was under the dominion and control of Defendant, it was certainly reasonable for Beavers to infer— based on the other information available—that Defendant possessed the firearm. *See id*. at 371 (reiterating that "[p]robable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules") (internal quotations and alterations omitted). Based on the information known to Beavers, we hold that he had probable cause to believe that Defendant possessed the AK-47 found in the bedroom.

**2. Probable Cause to Believe the Firearm was an "Automatic Firearm"**

We similarly reject Defendant's argument that the arrest violated the Fourth Amendment because Beavers did not have probable cause to believe that the AK-47 was an "automatic firearm" of the type prohibited by Ohio law. Regarding his identification of the firearm as an automatic, Beavers testified that the gun was a loaded Norinco Arm firearm that "appeared to be fully automatic." He explained that he based this conclusion on the weapons recognition training that he received at the police academy, as well as his review of automatic weapons previously confiscated by other officers. While Beavers admitted that he had limited experience with automatic firearms, this court finds that he had probable cause to believe that the firearm in question—which had an

opening for a banana clip like that found on the nearby table and of the type commonly associated

with automatic weapons—was an "automatic firearm" under Ohio law.  Although testimony from

a firearms expert likely would have been necessary to prove beyond a reasonable doubt that the gun

qualified as an "automatic firearm" under the Ohio statute, "standards such as proof beyond a

reasonable doubt or by a preponderance of the evidence . . . have no place in the [probable cause]

decision." *Illinois v. Gates*, 462 U.S. 213, 235 (1983).

The firearm at issue in this case was an AK-47, a very distinctive weapon, which would

reasonably appear to the average layperson—let alone a trained police officer—to *probably* be an

automatic firearm.  Such a "reasonable probability" is all that is required for Defendant's arrest to

be lawful.  *See Romero*, 452 F.3d at 617 (finding probable cause to arrest where "a prudent person

would determine that there was a reasonable probability that [the defendant] had committed the

crime" in question). Therefore, the district court correctly held that Beavers had probable cause to

arrest Defendant.

## III.  CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's denial of the motion to

suppress.