BYE, Circuit Judge,
concurring in part and dissenting in part.
I concur in the majority’s decision to affirm the district court’s suppression of Cowan’s statement to Detective Canas about why he had car keys if he had arrived by bus. I disagree with the remainder of the majority’s analysis, however, because I believe the incriminating nature of the keys was not immediately apparent to Detective Canas at the time of the pat-down search, and therefore the seizure of the keys was unlawful. Based in large part on this conclusion, I would affirm the district court’s suppression order in its entirety. I therefore respectfully dissent.
While the parties agree the officers were authorized to detain and frisk Cowan, the central issue revolves around the permissible scope of the pat-down search:
While the “purpose of a pat-down search is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence,” and while the search must therefore “be strictly limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby,” officers may lawfully seize contraband they incidentally discover in “plain touch” during a Terry frisk.
United States v. Bustos-Torres, 396 F.3d 935, 943-44 (8th Cir.2005) (quoting Minnesota v. Dickerson, 508 U.S. 366, 373, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993)). Unlike the majority, I believe the result in this case is dictated by Dickerson and its progeny.
In Dickerson, the Supreme Court established the “plain touch” doctrine whereby “[i]f a police officer lawfully pats down a suspect’s outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect’s privacy beyond that already authorized by the officer’s search for weapons[.]” 508 U.S. at 375, 113 S.Ct. 2130. Analogizing to the “plain view” doctrine, the Court stated, “if the object is contraband, its warrantless seizure would be justified by the same practical considerations that inhere in the plain-view context.” Id. at 375-76, 113 S.Ct. 2130; see also Bustos-Torres, 396 F.3d at 944 (‘While Dickerson’s holding refers specifically to contraband, we do not doubt the plain-touch doctrine extends to the lawful discovery of any incriminating evidence, not just contraband such as drugs.”). However, Dickerson cautioned an officer’s continued exploration of an object after he concludes an individual does not have a weapon is not authorized because it is unrelated to the justification of Terry of protecting the officer. 508 U.S. at 378, 113 S.Ct. 2130. Accordingly, the Court concluded an officer’s “squeezing, sliding and otherwise manipulating the contents of the defendant’s pocket — a pocket which the officer already knew contained no weapon,” was beyond the bounds of Terry. Id. (internal quotation marks and citation omitted).
Apposite here is Dickerson’s reliance on Arizona v. Hicks, 480 U.S. 321, 107 S.Ct. 1149, 94 L.Ed.2d 347 (1987), which invalidated the seizure of stereo equipment based on the officers’ determination the equipment was contraband “only after moving the equipment to permit officers to read its serial numbers.” Dickerson, 508 U.S. at 378-79, 113 S.Ct. 2130. The Court *960 rejected the application of the plain view doctrine under these circumstances
because the incriminating character of the stereo equipment was not immediately apparent; rather, probable cause to believe that the equipment was stolen arose only as a result of a further search — the moving of the equipment— that was not authorized by a search warrant or by any exception to the warrant requirement.
Id at 379, 113 S.Ct. 2130.
This court has since abided by the Supreme Court’s directive: “Dickerson requires the officer conducting a pat-down search have probable cause to believe the item in plain touch is incriminating evidence.” Bustos-Torres, 396 F.3d at 944. “To give rise to probable cause, the incriminating character of the object must be immediately identifiable.” Id at 945. “That is to say, the object must be one whose contour or mass makes its identity immediately apparent.” Id (internal quotation marks and citation omitted).
The question thus boils down to whether, at the time of the pat-down search, Cowan’s keys were immediately apparent as incriminating evidence. The majority first concludes this standard is met because Detective Canas “immediately recognized the object as keys and the warrant specifically authorized seizing keys as indicia of occupancy or ownership of the premises.” Ante, at 953. As astutely articulated by the district court, however, “this overlooks two essential facts: (1) the search warrant did not authorize the officers to search Defendant for the items listed in the search warrant, and (2) the warrant did not authorize the seizure of all keys, but only keys that were indicia of ‘occupancy, residency, rental and/or ownership of the premises described herein....’” Suppression Order at 11. Therefore, while the search warrant surely established probable cause to seize certain keys located in Booth’s residence, probable cause must still exist to show Cowan’s particular keys were indicia of occupancy of the premises. In other words, the judge’s probable cause determination via the search warrant did not allow the officers to seize every key found on every person who happened to be in the apartment at the time, much less all the money, jewelry, and other ubiquitous items listed in the warrant that would undoubtably be found on the persons of those present. See Ybarra v. Illinois, 444 U.S. 85, 92, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979) (concluding a search warrant for a premises does not allow the officers to search everyone inside the premises).
From there, the majority concludes the officers had probable cause to believe Co-wan was engaged in a common drug trafficking enterprise based on his presence in Booth’s apartment, the observation of someone running inside the apartment pri- or to the officers’ entry, and Cowan’s Chicago residence, which coincided with the reputed source of the drugs. As an initial matter, there are significant factual distinctions between this case and the majority’s cited authority. See Maryland v. Pringle, 540 U.S. 366, 371-73, 124 S.Ct. 795,157 L.Ed.2d 769 (2003) (discussing the defendant’s presence in a vehicle with two others at 3:16 a.m., with $763 in rolled-up cash in front of the defendant, and five baggies of cocaine accessible by all three men); United States v. Romero, 452 F.3d 610, 617-18 (6th Cir.2006) (noting the hotel room to which an undercover officer was invited to purchase drugs was registered in the defendant’s name, only the defendant and one other individual were present, and the defendant was in the contained area of the room alongside the drugs). Indeed, Romero expressly limited its holding, noting its “analysis would be different had the space involved been of a different size and nature, such as a home *961 or a place of business,” which “would increase the likelihood that unwitting and innocent individuals might be present,” as is the case here with Booth’s apartment. 452 F.3d at 618 n. 2.
In any event, the facts recited by the majority still do not establish the keys on Cowan’s person discovered by Detective Canas in plain touch were immediately identifiable as incriminating evidence. A review of Detective Canas’s testimony demonstrates otherwise. First, by the time Detective Canas felt the keys in Co-wan’s pocket, Detective Canas had heard Cowan say he had come on a bus from Chicago to visit his brothers and his mother. Suppression Tr. at 79-80. This undercuts the suggestion the keys were of the type in the search warrant because the fact Cowan resided in another state indicated the keys were not indicia of occupancy of Booth’s Davenport residence. Ultimately, while Cowan could have had keys to the residence, this mere possibility did not make it immediately apparent Cowan’s keys were to Booth’s residence. Moreover, the fact Chicago was the source city did not, at that time, provide probable cause that Cowan’s keys were evidence of a crime.
More importantly, Detective Canas testified he was told during surveillance, prior to executing the search warrant, “there was a vehicle out front that was involved, or that investigation needed to be done further to determine whether that vehicle was involved or not.” Id. at 81 (emphasis added).[4] It bears repeating that if the incriminating character of Cowan’s keys was not immediately apparent, and probable cause arose only after a further search, then the seizure of the keys was unlawful. Dickerson, 508 U.S. at 379, 113 S.Ct. 2130. Here, Detective Canas explicitly testified further action was needed to determine the nature of Cowan’s keys in light of his knowledge of the vehicle out front: “I told Mr. Cowan that I would be taking the handcuffs off of him until we were able to determine those keys — whether the vehicle keys belonged to a vehicle outside. I told him if they did not, then he would be free to leave.”[5] Suppression Tr. at 90. Accordingly, it was only after Detective Canas seized Cowan’s keys from his pocket, questioned Cowan about why he had keys if he had arrived by bus, examined whether the keys belonged to a Cadillac as asserted by Cowan, and walked out to the street to determine whether the key fob alerted to a vehicle that Detective Canas determined the nature of the keys.[6] If squeezing and *962 manipulating an object in someone’s pocket to determine its incriminating character was impermissible in Dickerson, 508 U.S. at 378, 113 S.Ct. 2130, and moving an object “even a few inches” to get a better view was impermissible in Hicks, 480 U.S. at 325, 107 S.Ct. 1149, surely Detective Canas’s successive actions to determine the character of Cowan’s keys cannot fall within the bounds of the plain touch doctrine.
In sum, even if Detective Canas had a suspicion the keys were involved in drug trafficking, the incriminating nature of the keys was not immediately apparent, and he developed probable cause only after a further search. See Hicks, 480 U.S. at 334, 107 S.Ct. 1149 (“The purpose of the immediately apparent requirement is to prevent general, exploratory rummaging in a person’s belongings.”) (O’Connor, J., dissenting) (internal quotation marks and citation omitted); United States v. Garcia, 496 F.3d 495, 510 (6th Cir.2007) (“[A]n object’s incriminating nature is not immediately apparent if it appears suspicious to an officer but further investigation is required to establish probable cause as to its association with criminal activity.”) (internal quotation marks and citation omitted). Because Detective Canas’s mere touch of the keys in Cowan’s pocket did not make it immediately apparent to him the keys were incriminating evidence of criminal activity, the seizure of the keys was unlawful.
In light of my belief Cowan’s keys were not immediately identifiable as incriminating evidence, I would not reach the issue of whether the use of the key fob constituted a reasonable search or seizure. I would, however, proceed to analyze whether the district court properly excluded the drugs found in Cowan’s car and Cowan’s post-Miranda statements as fruit of the poisonous tree. Moreover, while I agree with the majority’s decision to affirm the suppression of Cowan’s statement about why he had car keys if he arrived by bus, I would go further by affirming the suppression of the statement about how Cowan arrived at the apartment. “[Ajsking questions about when and how [the defendant] arrived at a household ostensibly linked to a drug sale, as well as his origin, are relevant to an investigation and cannot be described as related only to securing the house or identifying the defendant.” United States v. Pacheco-Lopez, 531 F.3d 420, 424 (6th Cir.2008).
Accordingly, I would affirm the district court’s thorough suppression order. Thus, I respectfully dissent.

. The majority notes the officers had observed two subjects sitting outside in the vehicles prior to executing the search warrant, but it neglects to mention Cowan was not one of them.

. I find it curious Cowan was uncuffed and told he was free to leave so long as his keys did not correspond to a vehicle outside (which happened after the drugs were found in the residence) in that the officers apparently did not maintain the high level of suspicion of Cowan ascribed to them by the majority at the time. However, despite the government's argument to the contrary, I believe this later-acquired fact is irrelevant to our inquiry, which focuses on whether the incriminating nature of the object was immediately identifiable at the time it was discovered. See Bustos-Torres, 396 F.3d at 944.

. I do not suggest Detective Canas had to know with certainty the true nature of Cowan's keys at the time of the pat-down search. See United States v. Muhammad, 604 F.3d 1022, 1028 (8th Cir.2010) ("Probable cause does not require absolute certainty; it only requires that the facts available to a reasonably cautious man would warrant a belief that certain items may be contraband or stolen property or useful as evidence of the crime.”) (internal quotation marks and citation omitted). From the facts available to Detective Canas at the time he felt Cowan's keys, however, it was not immediately apparent the keys were evidence of criminal activity.