NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0258n.06

Case No. 23-1223

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE WESTERN DISTRICT OF |
| TEIUN TYREE WALKER, | ) | MICHIGAN |
| Defendant-Appellant | ) | |
| | ) | OPINION |
| | ) | |

BEFORE: SILER, MATHIS, and BLOOMEKATZ, Circuit Judges.

SILER, J., delivered the opinion of the court in which BLOOMEKATZ, J., concurred. MATHIS, J. (pp. 7–9), delivered a separate opinion concurring in the judgment.

**SILER, Circuit Judge.** Teuin Walker, a convicted felon with an outstanding arrest warrant, walked to a convenience store to buy shredded cheese. He left the property under arrest after police broke up a group of gamblers in the store's parking lot, grabbed him during the operation, and discovered the pistol he was illegally carrying. He moved unsuccessfully to suppress the pistol, and now appeals from his conviction upon a conditional guilty plea. We affirm, holding that police had probable cause to arrest Walker on suspicion of gambling. [1]

---

[1]    Because we decide this case on probable cause, we do not address the district court's reasonable suspicion or inevitable discovery analysis.

**I.**

Walker's girlfriend, who was preparing dinner at her apartment, asked him to go to Daysha's Convenience Store next door and purchase some shredded cheese. Walker did so, bringing with him a cross-body satchel containing a small Ruger pistol.

Meanwhile, Kalamazoo Department of Public Safety ("KDPS") Sergeant Millard drove past Daysha's and noticed a group of men gathered on the pavement just outside the store, apparently gambling.[2] He parked in front of the apartment complex next door where Walker and his girlfriend lived and, still on the apartment property, proceeded to a spot where he could observe the group through a wooden privacy fence that separated the apartment property from the Daysha's parking lot. He could see and hear the men throwing down money and rolling dice against the side of the store, as they were only about ten feet away from him. When his body camera would not record through the narrow gap in the fence, he occasionally held it against a hole in the fence. Because of the size of the group and the high-crime nature of the area, Sgt. Millard called other officers to arrive at Daysha's to break up the gambling. He then identified three prominent individuals by radio to the approaching officers.

Walker, having finished his errand, left Daysha's and walked across the parking lot toward the road and the end of the fence. When he rounded the end of the privacy fence, he saw Sgt. Millard's police cruiser. Because his parole officer had informed him earlier in the day that there was an outstanding warrant for his arrest, Walker quickly turned around and walked back to Daysha's. He called his girlfriend and asked her to come pick him up at the store.

---

[2] Gambling, attempted gambling, and aiding and abetting gambling are misdemeanor offenses in Kalamazoo. *See* Kal. Code of Ord. §§ 22-37, 22-1, 22-2.

At various times while in the Daysha's parking lot, Walker walked past the group gambling by the entrance. Sgt. Millard observed him "lean into" the group and converse with the members. He also observed body language consistent with "trying to put down money or trying to see what the roll was." Walker walked away from the group and then later returned to it, which Sgt. Millard interpreted as involvement in the gambling, but Walker insisted it was solely so he could observe whether his girlfriend had left her apartment to pick him up. Later, Walker admitted that because he knew what game they were playing, he called out a single suggestion to a player as he walked by.[3] Based on his observations, Sgt. Millard believed that Walker was involved in illegal gambling activity.

When officers arrived, Sgt. Millard coordinated the bust from his observation position. He testified he heard Walker yell "police, police!" when the cruisers approached, and everyone scattered. Walker denies saying this, claiming that it is not his voice heard in the bodycam footage, and that he would have used a "hood term" to describe police, rather than the word "police." As police moved in, Sgt. Millard observed one suspect, Tillman, remove a revolver from his waistband and throw it over the fence behind which Sgt. Millard was hiding. Tillman and Walker then both walked across the parking lot away from police. Their proximity led Sgt. Millard to believe they had a "personal connection," and he directed the responding officers to "grab" them both. When officers approached Walker, he changed directions again, apparently to evade them, and refused to heed their commands to stop. Several officers were required to detain and handcuff him. Walker vigorously protested that he was not gambling and did not consent to a search. Kitts assured him that he was simply being patted down for officer safety and that he was only detained.

---

[3] Subsequently, in a recorded jail call to another girlfriend, Walker admitted to giving advice about the game to some of the players. While this is not material to the existence of probable cause at the time of arrest, it does corroborate officers' contemporaneous interpretation of events.

Halfway through Officer Kitts' pat-down, Sgt. Millard yelled over the fence that Walker was "in custody for gambling."

When Officer Kitts patted down Walker, he also patted down his bag. Almost immediately he felt a pistol, removed the bag from Walker, and handed it to Officer Weston for evidence collection. Officer Kitts then asked Sgt. Millard to confirm that Walker was under arrest for gambling and placed him under arrest. After Walker was arrested, officers discovered that he had an outstanding parole violation warrant and that his conditions of parole included a search provision.

Walker was indicted on one count of possession of a firearm by a felon. The court denied a motion to suppress the firearm. Walker was sentenced to 70 months imprisonment and 3 years supervised release.

**II.**

We review the denial of a motion to suppress de novo, and factual findings for clear error. *United States v. Shank*, 543 F.3d 309, 312 (6th Cir. 2008). The district court's determination of probable cause is a mixed question of law and fact which we review de novo. *United States v. Pacheco*, 841 F.3d 384, 389 (6th Cir. 2016). But all evidence is considered "in the light most likely to support the district court's decision," and that decision is affirmed if it "can be justified for any reason." *United States v. Bateman*, 945 F.3d 997, 1005 (6th Cir. 2019) (quotations omitted).

Police may arrest an individual without a warrant if "probable cause exists for the arresting officer's belief that a suspect has violated or is violating the law." *Criss v. City of Kent*, 867 F.2d 259, 262 (6th Cir. 1988). Probable cause exists if the police can articulate "facts and circumstances" showing "that the suspect has committed, is committing, or is about to commit an

offense." *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979). This showing is evaluated under a "reasonable person" standard. *See United States v. Strickland*, 144 F.3d 412, 415 (6th Cir. 1998).

In evaluating probable cause in this case, we look at the totality of the circumstances to see if there existed a "probability or substantial chance of criminal activity." *District of Columbia v. Wesby*, 583 U.S. 48, 57 (2018) (internal quotations omitted). Probable cause is determined based on the facts and circumstances apparent to the responding officers at the time. *See United States v. Romero*, 452 F.3d 610, 615 (6th Cir. 2006).

We hold that the police had probable cause to arrest Walker for a violation of the city's gambling ordinance. That ordinance criminalizes not just gambling, but attempted gambling and aiding and abetting gambling as well. *See* Kal. Code of Ord. §§ 22-37, 22-1, 22-2. The district court discounted as not credible Walker's testimony that he did not take part in the gambling and merely called out a suggestion to the players as he walked by, and instead credited Sgt. Millard's account of events. In that account, Sgt. Millard observed a group of men gambling, and, standing ten feet away behind a privacy fence, observed them shooting dice and throwing money. He further observed Walker approach the group, "lean in" in a manner consistent with participation in the game, and then walk away. In that time, he saw Walker make motions consistent with active participation in the game, although he did not directly observe Walker throwing dice or contributing money. Based on this, Sgt. Millard concluded that Walker was participating in illegal gambling activity.

When the police entered the Daysha's parking lot in force, Sgt. Millard's further observations of Walker and the gamblers reinforced his initial conclusions of Walker's culpability. First, he heard Walker warn the gamblers, calling out "police, police!" when the officers arrived. The suspects then scattered, and Walker and another gambler, Tillman, were observed walking

away from police in apparent proximity to each other. Sgt. Millard concluded that this proximity implied that Tillman and Walker knew each other. Although this later turned out to be erroneous, a reasonable officer on the scene at the time could have arrived at the same conclusion.

Walker argues that the government relied too much on the high-crime nature of the area in justifying his arrest. But that oversimplifies the record. As the district court pointed out in its oral ruling, probable cause was grounded in far more than the general characteristics of the area. Sgt. Millard observed Walker's behavior and saw several actions consistent with participation in the gambling activity that was clearly—and undisputedly—occurring.

The concept of probable cause "is a fluid concept that is not readily, or even usefully, reduced to a neat set of legal rules." *Wesby*, 583 U.S. at 57 (internal quotations omitted). It is more than reasonable suspicion, but "requires only a probability or substantial chance of criminal activity." *Id*. Under these facts as recounted by Sgt. Millard and credited by the district court, there was sufficient evidence to establish a "substantial chance of criminal activity" on the part of Walker. *Id*. The police had probable cause to arrest Walker; therefore, the subsequent search and discovery of the handgun was constitutional and the motion to suppress was properly denied.

AFFIRMED.

**MATHIS, Circuit Judge, concurring in the judgment.** I agree with the lead opinion that the district court did not err in denying Teiun Walker's motion to suppress. Although I do not believe that police officers had probable cause to stop Walker, they did have reasonable suspicion to detain him. And that detention would have inevitably led to the discovery of the firearm in Walker's possession because of his outstanding arrest warrant.

The police had the requisite reasonable suspicion of criminal activity to stop Walker. When an officer has a reasonable, articulable suspicion that a person may be involved in criminal activity, he may conduct a brief investigatory stop of the person. *Terry v. Ohio*, 392 U.S. 1, 30–31 (1968). Several factors may be relevant to this determination. For example, a defendant's presence in a high-crime area can support a finding of reasonable suspicion. *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000). So can "obvious attempts to evade officers." *United States v. Brignoni-Ponce*, 422 U.S. 873, 885 (1975). Here, after standing next to and conversing with multiple people engaged in illegal gambling in a high-crime area, Walker changed direction not once, but twice to avoid being stopped by the police. Moreover, he headed in the same direction as a gambling suspect when that person tossed his handgun over a fence. Taken together, these facts "give rise to reasonable suspicion" that Walker was involved in criminal activity, permitting the officers to detain him. *United States v. Jacob*, 377 F.3d 573, 577 (6th Cir. 2004) (citing *United States v. Arvizu*, 534 U.S. 266, 274–75, 277 (2002)).

Once the officers lawfully stopped Walker, they would have inevitably found his gun one way or another. The U.S. Constitution "allows for the admission of evidence that would have been discovered even without the [alleged] unconstitutional source." *United States v. Cooper*, 24 F.4th 1086, 1091 (6th Cir. 2022) (quoting *Utah v. Strieff*, 579 U.S. 232, 238 (2016)). Courts will not exclude such evidence if the government shows that a "routine procedure" would have uncovered

the evidence. *Id*. (quoting *United States v. Kennedy*, 61 F.3d 494, 500 (6th Cir. 1995)). The record shows that Kalamazoo Department of Public Safety officers routinely run warrant checks on any person they detain. The record also supports the inference that the only reason the officers did not run a warrant check on Walker in this instance was because they already decided to arrest Walker for gambling and had already found his handgun in his shoulder bag. Had the police not already arrested Walker, they would have conducted a warrant check, located Walker's outstanding warrant, arrested him on that warrant, and found the gun when they searched him incident to that arrest.

I do not believe that the police had probable cause to arrest Walker for gambling. "To determine whether an officer had probable cause to arrest an individual, we examine the events leading up to the arrest, and then decide whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause." *Maryland v. Pringle*, 540 U.S. 366, 371 (2003) (quotation omitted). In other words, the "facts and circumstances within the officer's knowledge" must suffice to warrant a reasonable person to believe "that the suspect has committed, is committing, or is about to commit an offense." *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979). The government has the burden to show that "at the moment the arrest was made, the officers had probable cause to make it." *Beck v. Ohio*, 379 U.S. 89, 91 (1964).

At the time of Walker's arrest, Sergeant Millard observed Walker "leaning into the group [and] conversing with the individuals there." R. 50, PageID 290. He admitted that he did not see Walker put money down or roll any dice, nor did he indicate whether he heard anything Walker said to the gamblers. He saw Walker "actively participating in the nature of conversing with the individuals present and moving over, which was the general motion of people who were trying to put down money or trying to see what the roll was." *Id.* In other words, Sergeant Millard observed

8

Walker watching the gambling game, talking to people, and moving around. These observations, even taking into account the high-crime area and Walker's attempt to evade police, do not establish probable cause. Kalamazoo outlaws gambling and aiding and abetting gambling. *See* Kal. Code Ord. §§ 22-2; 22-37. But it does not criminalize merely watching people gamble or talking to people who are doing so. Although Walker later admitted to participating in the game by calling out a suggestion to one of the players as he walked by, Sergeant Millard did not hear Walker do that at the scene. So he lacked sufficient information to reasonably conclude that Walker actively participated in, or aided and abetted, illegal gambling.