# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 11-1525

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Southern District of Iowa. |
| Mauriosantana Cowan, | * | |
| | * | |
| Appellee. | * | |

_____

Submitted: November 16, 2011
Filed: March 23, 2012

_____

Before RILEY, Chief Judge, BEAM and BYE, Circuit Judges.

_____

RILEY, Chief Judge.

Mauriosantana Cowan was charged with conspiracy knowingly to distribute cocaine base (crack cocaine), in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and 846. The government appeals the district court's suppression of certain physical evidence and incriminating statements Cowan made. We affirm in part, reverse in part, and remand for further proceedings.

## I.    BACKGROUND

### A.    Factual Background

The government does not challenge any of the district court's factual findings, "so we recite the facts below as found by the [district] court after the hearing on [Cowan's] suppression motion." United States v. Cloud, 594 F.3d 1042, 1043 (8th Cir. 2010).

Based upon information from a confidential informant, a controlled purchase of crack cocaine, and surveillance, police officers in Davenport, Iowa, believed crack cocaine transported from Chicago, Illinois, was being sold out of an apartment associated with Johnny Booth. During surveillance of the apartment, officers observed two subjects sitting in vehicles outside the apartment and believed one or more of the vehicles outside may have been involved in the drug trafficking. The officers obtained a warrant to search the apartment, the person of Booth, and associated parking areas for controlled substances and "[i]ndicia of occupancy, residency, rental and/or ownership of the premises, described herein including . . . keys." Seven officers entered the apartment to serve the warrant. After breaking down the exterior door to the building and before entering the apartment by breaching a second locked door, the officers saw a person running from one part of the apartment to another. The officers discovered at least eight adults, including Cowan, and two children in the apartment. The officers handcuffed Cowan and others.

Before searching the apartment, Detective Epigmenio Canas frisked Cowan's outer clothing and asked whether he had identification. Cowan responded that his identification was in his wallet. Detective Canas reached into Cowan's back pocket, removed Cowan's wallet, and checked Cowan's identification. While Detective Canas continued to frisk Cowan, Detective Canas asked Cowan how he got to the apartment. Cowan claimed he had traveled by bus from Chicago. Detective Canas felt a set of keys in Cowan's front pocket. Detective Canas removed the keys and asked Cowan why he had car keys if he had taken the bus. Cowan responded he was

carrying the keys to his Cadillac so his girlfriend would not have the keys. Detective Canas recognized the keys were not for a Cadillac and suspected Cowan was not truthful.

During the subsequent search of the apartment, the officers found crack cocaine in several locations. After the officers finished searching the apartment, Detective Canas took the handcuffs off Cowan and told him he could leave if the keys did not match a vehicle parked outside of the apartment. Detective Canas walked outside with Cowan and another officer. Detective Canas continued to press the alarm button on Cowan's key fob, until it set off the alarm on a car parked in front of the apartment building.[1] The other officer re-handcuffed Cowan. Detective Canas told Cowan he could not leave. A drug dog brought to the scene to sniff Cowan's car alerted for the presence of drugs in Cowan's car. The officers searched Cowan's car and found crack cocaine.

The officers took Cowan back inside, and Sergeant Gilbert Proehl informed Cowan of his rights under Miranda v. Arizona, 384 U.S. 436 (1966), and asked Cowan about the crack cocaine found in the car. Cowan gave incriminating responses, saying he drove the crack cocaine from Chicago, Illinois, to Davenport, Iowa, for $300.

## B.    Procedural History

The grand jury charged Cowan and Booth with conspiracy to distribute crack cocaine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and 846. Cowan moved to suppress the key fob, Cowan's custodial statements to Detective Canas, the identification of Cowan's car, the dog sniff of Cowan's car, the crack cocaine found

---

[1]One of the officers testified the car was registered to a third person who was not present at Booth's apartment, but the district court did not make any factual findings on this issue. The car will be referred to as "Cowan's car" because he possessed the vehicle's keys.

in Cowan's car, and Cowan's statements to Sergeant Proehl.  The district court granted the motion.  The district court suppressed the keys and, *sua sponte*, Cowan's personal identification, finding the officers' search for these items and retrieval of the keys from Cowan's pocket violated his Fourth Amendment rights.  The district court suppressed the crack cocaine found in Cowan's car as fruit of an illegal search.  The district court allowed the statements to Detective Canas regarding Cowan's biographical information as responses to questions "fall[ing] within the routine identification question exception . . . to Miranda," but suppressed Cowan's explanation of how he arrived at the apartment and why he had keys if he arrived by bus, finding Detective Canas' failure to warn Cowan of his Miranda rights before these questions and answers violated the Fifth Amendment and required exclusion of Cowan's responses from evidence at trial.  The district court found Cowan voluntarily waived his Miranda rights before speaking to Sergeant Proehl, but suppressed those statements as fruit of the earlier illegal search. The district court did not reach Cowan's argument that using the key fob to locate Cowan's car was a separate illegal search.

The government appeals pursuant to 18 U.S.C. § 3731, challenging the district court's holdings excluding (1) the evidence derived from the searches of Cowan's pockets, finding his keys, and his car, discovering drugs; and (2) Cowan's statements. The government does not appeal the exclusion of Cowan's personal identification.

## II.    DISCUSSION

In reviewing the district court's grant of Cowan's motion to suppress, we review the district court's legal conclusions de novo and its factual findings for clear error.  See United States v. Vanover, 630 F.3d 1108, 1113 (8th Cir. 2011).

### A.    Fourth Amendment
#### 1.    Seizure of the Keys

Cowan concedes Detective Canas was permitted to detain and pat him down during the warranted search of the premises, but contends the search "exceeded the constitutional bounds set by Terry v. Ohio, 392 U.S. 1 (1968)." See Muehler v. Mena, 544 U.S. 93, 98 (2005) (noting "officers executing a search warrant for contraband have the authority 'to detain the occupants of the premises while a proper search is conducted'" (quoting Michigan v. Summers, 452 U.S. 692, 705 (1981))); United States v. Horton, 611 F.3d 936, 940-41 (8th Cir. 2010) ("Once a suspect is legally stopped, 'an officer who has reason to believe the detained individual may be armed and dangerous may conduct a pat-down search for weapons to ensure officer safety.'" (quoting United States v. Davis, 457 F.3d 817, 822 (8th Cir. 2006))).  The officers were executing a warrant at a place of suspected drug trafficking where weapons may have been present, and the officers were outnumbered by the suspects.  Detective Canas could detain Cowan, temporarily handcuff Cowan, and pat Cowan down.

A police officer "lawfully pat[ting] down a suspect's outer clothing" may seize any "object whose contour or mass makes its identity immediately apparent" as incriminating evidence.  See Minnesota v. Dickerson, 508 U.S. 366, 375 (1993); United States v. Bustos-Torres, 396 F.3d 935, 944 (8th Cir. 2005) (holding the "plain feel" exception of Dickerson applies to "any incriminating evidence," not just contraband).  The Supreme Court noted in Texas v. Brown that the phrase "immediately apparent" is misleading ("very likely an unhappy choice of words") because "it can be taken to imply that an unduly high degree of certainty as to the incriminatory character of evidence is necessary for an application of the 'plain view' doctrine." Texas v. Brown, 460 U.S. 730, 741 (1983) (plurality opinion).  The Supreme Court clarified that an item's incriminatory nature is immediately apparent if the officer at that moment had "probable cause to associate the property with criminal activity," id. at 741-42 (quoting Payton v. New York, 445 U.S. 573, 587 (1980) (internal quotation marks and emphasis omitted)), meaning "the facts available

to the officer would 'warrant a man of reasonable caution in the belief' that certain items may be contraband or stolen property or useful as evidence of a crime." Id. at 742 (quoting Carroll v. United States, 267 U.S. 132, 162 (1925)). It does not require "any showing that such a belief be correct or more likely true than false. A 'practical, nontechnical' probability that incriminating evidence is involved is all that is required." Id. (quoting Brinegar v. United States, 338 U.S. 160, 176 (1949)).

When Detective Canas felt the keys in Cowan's front pocket, Detective Canas was justified in reaching into Cowan's pocket and seizing the keys (and the attached key fob) because Detective Canas immediately recognized the object as keys and the warrant specifically authorized seizing keys as indicia of occupancy or ownership of the premises.[2] The situation here was unlike Dickerson, in which the Supreme Court refused to validate a search and seizure where an officer conducting a Terry frisk determined a small, hard lump was crack cocaine only after "squeezing, sliding, and otherwise manipulating the contents of the defendant's pocket." Dickerson, 508 U.S. at 378. Here, Detective Canas did not conduct any "further search . . . not authorized by Terry or by any other exception to the warrant requirement." Id. at 379. At the time Detective Canas felt the keys in Cowan's pocket, Detective Canas reasonably could have believed the keys were apartment keys and, therefore, covered by the warrant.

The district court excluded the keys because it found "other than [Cowan's] mere presence at the home, officers had no reason to suspect that [Cowan's] keys were evidence of a crime. Mere presence in a location to be searched does not create probable cause." The district court relied on Ybarra v. Illinois, 444 U.S. 85, 91-92 (1979), in which the Supreme Court held mere presence as a patron in a public tavern at the time a search warrant—authorizing a search of the tavern and a bartender for

---

[2]We do not fully address the parties' arguments concerning whether the keys' incriminating nature would have been immediately apparent if they were not covered by the warrant.

controlled substances—was executed did not give officers probable cause to search patrons. However, the Supreme Court later rejected an attempt to use the Ybarra reasoning and holding to invalidate the search of a car passenger during a traffic stop. See Maryland v. Pringle, 540 U.S. 366, 372-73 (2003) (deciding a reasonable officer who finds cocaine in a car "could conclude that there was probable cause to believe [one of the car's occupants] committed the crime of possession of cocaine"). In Pringle, the Supreme Court distinguished Ybarra, explaining "a car passenger—unlike the unwitting tavern patron in Ybarra—will often be engaged in a common enterprise with the driver, and have the same interest in concealing the fruits or the evidence of their wrongdoing. . . . [I]t was reasonable for an officer to infer a common enterprise among the three men [in the car]." Id. at 373 (quoting Wyoming v. Houghton, 526 U.S. 295, 304-05 (1999) (internal quotation marks omitted)).

The Sixth Circuit applied the probable cause reasoning of Pringle to officers arresting a man they found in a hotel room, whom they believed was associated with drug trafficking. See United States v. Romero, 452 F.3d 610, 617-18 (6th Cir. 2006). The Sixth Circuit noted:

> Like the enclosed space of the automobile in which the individuals were arrested in Pringle, the relatively small and confined space of the hotel room supports the conclusion that it was reasonable for the officers to infer from the facts known to them at the time of the arrest that [the defendant] was involved in a common illegal-drug enterprise with [another man who instructed an undercover police officer to come to the hotel room to buy drugs]. The officers had "reasonably trustworthy information" . . . that led the arresting officers to believe that the hotel room had been reserved and was being utilized for the purposes of drug dealing. It was reasonable for the officers to infer that [the defendant] was involved in the drug-dealing enterprise that was being conducted out of the hotel room, because drug dealing is "an enterprise to which a dealer would be unlikely to admit an innocent person with the potential to furnish evidence against him."

Id. at 618 (internal citations omitted) (quoting Pringle, 540 U.S. at 373).

In Cowan's case, the officers had a warrant to search Booth's apartment based upon information that drug trafficking was occurring there. As with the car in Pringle and the hotel room in Romero, the officers had probable cause to believe Cowan, who was present in the apartment, was engaged in a common drug trafficking enterprise with the apartment's occupants. Cowan was unlike "the unwitting tavern patron" in Ybarra, whose reasons for being at the public tavern during the search probably were not connected to any illegal activity taking place at the tavern. See Ybarra, 444 U.S. at 91; Pringle, 540 U.S. at 373.

Cowan's presence in Booth's apartment, unlike the patron in the public tavern in Ybarra and more like the passenger in the private car in Pringle or the hotel room occupant in Romero, could lead a reasonable officer "to infer [Cowan was part of] a common enterprise" among the people in the apartment. Pringle, 540 U.S. at 373. Although an apartment "is a larger and more multipurpose space," Romero, 452 F.3d at 618 n.2, than the hotel room in Romero, Detective Canas had additional reason to suspect Cowan was involved in the drug trafficking activity. After breaking down the exterior door to the building and before entering the apartment, the officers saw someone running inside, which reasonably suggested people present in the apartment were trying to conceal evidence of drug trafficking activity. When Cowan stated he was from Chicago—the reputed source of the crack cocaine used in the suspected drug trafficking operation occurring in the apartment—Cowan gave Detective Canas particularized suspicion that Cowan himself was involved in the drug trafficking. The present case is further distinguishable from Ybarra because Detective Canas frisked Cowan's outer clothing pursuant to Terry, and the search of Ybarra was not a valid Terry frisk. See Ybarra, 444 U.S. at 92-93. Detective Canas did not violate Cowan's Fourth Amendment right to be free from unreasonable searches and seizures by patting down Cowan's pockets and seizing the keys.

### 2. Use of the Key Fob

An individual may challenge a search under the Fourth Amendment if it violates the individual's "reasonable expectation of privacy," United States v. Jones, 565 U.S. __, __, 132 S. Ct. 945, 950-53 (2012) (quoting Katz v. United States, 389 U.S. 347, 361 (1967) (Harlan, J., concurring), or involves an unreasonable "physical intrusion of a constitutionally protected area," id. at __, 132 S. Ct. 945, 950-53 (quoting United States v. Knotts, 460 U.S. 276, 286 (1983) (Brennan, J., concurring in the judgment) (internal quotation marks omitted)) in order to find something or obtain information. Even if Detective Canas' use of Cowan's key fob to locate the car was a search or seizure, it would be reasonable under the Fourth Amendment's automobile exception.

Cowan did not have a reasonable expectation of privacy in the identity of his car. The Supreme Court has noted "the diminished expectation of privacy in an automobile," Knotts, 460 U.S. at 281, and that "[a] car has little capacity for escaping public scrutiny. It travels public thoroughfares where its occupants and its contents are in plain view." Cardwell v. Lewis, 417 U.S. 583, 590 (1974).[3] If Cowan's car were in Chicago or otherwise not present, the fob would have disclosed nothing. If the keys and car belonged to someone else and Cowan had no possessory interest in the vehicle, Cowan had no expectation of privacy in the vehicle. If the keys belonged to a car in the apartment's associated parking area, the fob merely would identify the vehicle. The officers could have obtained the identification information by conducting a background check on the car's license plates or vehicle identification number or placing the car under surveillance and waiting for the owner or for an abandonment. See Knotts, 460 U.S. at 282 (noting an individual's expectation of

---

[3]The Supreme Court in Jones refused to overrule the Katz line of cases, stating that the cases are still good law with regard to whether the government has violated an individual's reasonable expectation of privacy, but those cases do not address the second, "the common-law trespassory," prong of the Fourth Amendment analysis. Jones, 565 U.S. at __, 132 S. Ct. at 951-53.

privacy was not violated by government surveillance and "visual observation of [his] automobile arriving on his premises after leaving a public highway").

Cowan argues his privacy interest was in the key fob's electronic code. The officers did not attempt to discover the code. Pressing the alarm button on the key fob was a way to identify the car and did not tell officers anything about the fob's code or the car's contents. Cf. United States v. Salgado, 250 F.3d 438, 456 (6th Cir 2001) (deciding "the mere insertion of a key into a lock" to determine whether it fits is not a search); United States v. $109,179 in U.S. Currency, 228 F.3d 1080, 1087-88 (9th Cir. 2000) (similar); United States v. Lyons, 898 F.2d 210, 213 (1st Cir. 1990) (similar). Cowan has not met his burden of articulating how Detective Canas' use of the key fob violated his reasonable expectation of privacy. See United States v. Monie, 907 F.2d 793, 794 (8th Cir. 1990) (stating burden of proof).

On the other hand, the Supreme Court recently explained "Fourth Amendment rights do not rise or fall" with whether the government violated an individual's reasonable expectation of privacy. Jones, 565 U.S. at __, 132 S. Ct. at 950. We also must consider whether the government conducted a search by physically intruding on "a constitutionally protected area" to find something or obtain information. Id. at __, 132 S. Ct. at 951 (quoting Knotts, 460 U.S. at 286) (Brennan, J., concurring in the judgment) (internal quotation marks omitted)). In Jones, the Supreme Court held that attaching a Global Positioning System (GPS) tracking device to an individual's vehicle and using "that device to monitor the vehicle's movements, constitutes a 'search.'" Id. at __, 132 S. Ct. at 949. The Court reached this conclusion because the government "trespassorily inserted" the GPS tracking device when officers attached the device to the undercarriage of the target vehicle, monitoring the vehicle for four weeks. Id. at __, 132 S. Ct. at 948, 952. There is no trespass when the government comes into physical contact with or possession of an item when the government is authorized to do so and the mere transmission of electric signals alone is not a

trespass. Id. at __, 132 S. Ct. at 951-53. In the present case, Detective Canas did not trespass on the key fob itself because he lawfully seized it.

Assuming Detective Canas' use of the key fob constituted a search or seizure, it was justified by the automobile exception to the Fourth Amendment. "If a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment thus permits police to search the vehicle without more." Pennsylvania v. Labron, 518 U.S. 938, 940 (1996). This is because "the overriding societal interests in effective law enforcement justify an immediate search before the car and its occupants become unavailable." California v. Carney, 471 U.S. 386, 393 (1985). A similar interest justifies pressing a key fob button to locate a vehicle when officers have probable cause to believe the vehicle contains contraband or otherwise is involved in drug trafficking. Detective Canas had probable cause to believe the keys—if they belonged to a vehicle parked near the apartment—would lead the officers to an automobile containing contraband. During surveillance of the apartment, before executing the warrant, officers had observed two suspects sitting in vehicles outside the apartment. By the time Detective Canas removed the keys from Cowan's pocket and discovered they were car keys, Cowan had stated he was from Chicago. Because the officers had information linking the apartment to crack cocaine brought from Chicago, Cowan's statement and his presence in the apartment gave Detective Canas reason to believe Cowan may have driven crack cocaine to the apartment from Chicago. The officers' discovery of crack cocaine in the apartment corroborated the informant's story and bolstered Detective Canas' probable cause. Cowan was carrying car keys but claimed he arrived by bus and further claimed the keys belonged to a Cadillac—which Detective Canas immediately recognized was false. These potential inconsistencies alerted Detective Canas to the probability Cowan was being untruthful, and gave Detective Canas further reason to suspect Cowan and his car were tied to drug trafficking. Detective Canas' actual use of the key fob was limited in time and scope and occurred in the apartment's associated parking areas. To the extent pressing the key fob button was a search and seizure, it

-11-

was permissible under the automobile exception to the Fourth Amendment's warrant requirement because it was based on probable cause.

### 3.    Poison Fruit

The district court erred in excluding (1) the crack cocaine found in Cowan's car, and (2) Cowan's incriminating statements to Sergeant Proehl as fruit of an illegal search because the officers did not violate Cowan's Fourth Amendment rights in recovering the keys or using the key fob to identify the car.

## B.    Statements

Cowan does not contest the district court's finding that he voluntarily waived his Miranda rights before speaking to Sergeant Proehl. We address only whether the district court properly suppressed Cowan's unwarned answer to Detective Canas' questions about how he got to the apartment and why he had car keys if he had taken the bus. "Miranda . . . requires that a warning as to the availability of the privilege against self-incrimination and to the assistance of counsel be issued *prior to questioning* whenever a suspect is (1) interrogated (2) while in custody." United States v. Griffin, 922 F.2d 1343, 1347 (8th Cir. 1990).

### 1.    Custody

A suspect is in custody if a reasonable person in his position would not have felt free to terminate the interrogation and leave. See United States v. Martinez, 462 F.3d 903, 909 (8th Cir 2006). We have identified six non-exclusive factors for determining whether a suspect is in custody: (1) whether police told the suspect "that the questioning was voluntary," the suspect could leave or ask the officers to do so, "or that the suspect was not considered under arrest"; (2) whether the suspect's movement was restrained during the questioning; (3) "whether the suspect initiated contact with authorities or voluntarily acquiesced to official requests to respond to questions"; (4) whether police used "strong arm tactics or deceptive stratagems" during questioning; (5) "whether the atmosphere of the questioning was police dominated"; and (6)

whether the suspect was arrested at the end of the questioning. Griffin, 922 F.2d at 1349. "[T]he critical inquiry is not whether the interview took place in a coercive or police dominated environment, but rather whether the defendant's freedom to depart was restricted in any way." Martinez, 462 F.3d at 909 (quoting United States v. LeBrun, 363 F.3d 715, 720 (8th Cir. 2004) (en banc) (internal quotation marks omitted)). Based on this principle, we concluded the defendant in Martinez was in custody because he

> was detained by two officers, patted down for weapons (with none being found), and closely questioned about his possession of weapons. Then, he was handcuffed and told he was being further detained. This occurred before being questioned by the two officers. A reasonable person would not, considering the totality of the circumstances, feel he was at liberty to stop the questioning and leave.

Id.

As in Martinez, we conclude Cowan was in custody because a reasonable person in Cowan's position would not have felt free to end the questioning and leave. Cowan was detained, handcuffed, and patted down while Detective Canas questioned him. No one told Cowan he was free to leave or to abstain from answering questions. Cowan did not volunteer to answer questions.

The government argues this conclusion is contrary to the Supreme Court's holding in Muehler, 544 U.S. at 95, 102. Muehler involves the Fourth Amendment in a 42 U.S.C. § 1983 action, and does not even mention Miranda. See id. at 95-97. The government acknowledges this, but argues Muehler's holding "is in accord with the long-settled principle that in the case of a Terry stop, there is no custodial seizure triggering the protections of Miranda." We rejected this categorical approach in Martinez, 462 F.3d at 909-10 (relying on Berkemer v. McCarty, 468 U.S. 420, 440-41 (1984)).

-13-

### 2. Interrogation

A question is an interrogation if it is "reasonably likely to elicit" incriminating information. Pennsylvania v. Muniz, 496 U.S. 582, 600-01 (1990). Interrogation does not include "request[s] for routine information necessary for basic identification purposes." United States v. Brown, 101 F.3d 1272, 1274 (8th Cir. 1996) (quoting United States v. McLaughlin, 777 F.2d 388, 391-92 (8th Cir. 1985) (internal quotation marks omitted)) and (citing Muniz, 496 U.S. at 602 n.14). This exception does not apply when "the government agent should reasonably be aware that the information sought . . . is directly relevant to the substantive offense charged." Id. (quoting McLaughlin, 777 F.2d at 391-92 (internal quotation marks omitted)) and (citing Muniz, 496 U.S. at 602 n.14).

Detective Canas' question asking Cowan how he arrived at the apartment was not an interrogation because it was a "request for routine information necessary for basic identification purposes." Brown, 101 F.3d at 1274. Detective Canas was trying to understand and identify Cowan's presence in the apartment. Cowan's answer—that he arrived by bus from Chicago—was not obtained in violation of Miranda.

However, this answer gave Detective Canas information that made Detective Canas' next question—why Cowan had car keys if he arrived by bus—exceed a routine, basic identification inquiry and become an interrogation. In Martinez, police interrogated the defendant (whom they suspected of bank robbery) when they asked him to explain the presence of a wad of cash. See Martinez, 462 F.3d at 906, 908-909. Asking Cowan why he had keys if he arrived by bus is similar to the questioning in Martinez because in both cases the officer "should reasonably [have been] aware that the information sought . . . is directly relevant to the substantive offense," eliciting potentially incriminating information. Brown, 101 F.3d at 1274. In both cases, the officer asked about an item the officers suspected linked the defendant to a crime (Cowan's connection to illegal drug trafficking from Chicago). Detective Canas already had information linking both the crack cocaine and Cowan to Chicago.

-14-

Detective Canas may well have suspected Cowan of transporting the crack cocaine and asked about the keys and bus ride to discover how Cowan might explain the perceived inconsistency. While a similar question may be permissible in a non-custodial situation, such as an ordinary traffic stop, see Berkemer, 468 U.S. at 439-40, the question about the keys and bus ride triggers the protections of Miranda when, as here, it is asked in a custodial situation.

## III.    CONCLUSION

We affirm in part, reverse in part, and remand for further proceedings. We affirm the district court's suppression of Cowan's answer to Detective Canas about why he had keys if he arrived by bus, and reverse the district court's suppression of the keys, the drugs found in Cowan's car, Cowan's statement that he arrived by bus from Chicago, and Cowan's responses to Sergeant Proehl.

BYE, Circuit Judge, concurring in part and dissenting in part.

I concur in the majority's decision to affirm the district court's suppression of Cowan's statement to Detective Canas about why he had car keys if he had arrived by bus. I disagree with the remainder of the majority's analysis, however, because I believe the incriminating nature of the keys was not immediately apparent to Detective Canas at the time of the pat-down search, and therefore the seizure of the keys was unlawful. Based in large part on this conclusion, I would affirm the district court's suppression order in its entirety. I therefore respectfully dissent.

While the parties agree the officers were authorized to detain and frisk Cowan, the central issue revolves around the permissible scope of the pat-down search:

> While the "purpose of a pat-down search is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence," and while the search must therefore "be strictly limited to that which is necessary for the discovery of weapons which might be used to

harm the officer or others nearby," officers may lawfully seize contraband they incidentally discover in "plain touch" during a <u>Terry</u> frisk.

<u>United States v. Bustos-Torres</u>, 396 F.3d 935, 943-44 (8th Cir. 2005) (quoting <u>Minnesota v. Dickerson</u>, 508 U.S. 366, 373 (1993)). Unlike the majority, I believe the result in this case is dictated by <u>Dickerson</u> and its progeny.

In <u>Dickerson</u>, the Supreme Court established the "plain touch" doctrine whereby "[i]f a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons[.]" 508 U.S. at 375. Analogizing to the "plain view" doctrine, the Court stated, "if the object is contraband, its warrantless seizure would be justified by the same practical considerations that inhere in the plain-view context." <u>Id.</u> at 375-76; <u>see also</u> <u>Bustos-Torres</u>, 396 F.3d at 944 ("While <u>Dickerson</u>'s holding refers specifically to contraband, we do not doubt the plain-touch doctrine extends to the lawful discovery of any incriminating evidence, not just contraband such as drugs."). However, <u>Dickerson</u> cautioned an officer's continued exploration of an object after he concludes an individual does not have a weapon is not authorized because it is unrelated to the justification of <u>Terry</u> of protecting the officer. 508 U.S. at 378. Accordingly, the Court concluded an officer's "squeezing, sliding and otherwise manipulating the contents of the defendant's pocket—a pocket which the officer already knew contained no weapon," was beyond the bounds of <u>Terry</u>. <u>Id.</u> (internal quotation marks and citation omitted).

Apposite here is <u>Dickerson</u>'s reliance on <u>Arizona v. Hicks</u>, 480 U.S. 321 (1987), which invalidated the seizure of stereo equipment based on the officers' determination the equipment was contraband "only after moving the equipment to permit officers to read its serial numbers." <u>Dickerson</u>, 508 U.S. at 378-79. The Court rejected the application of the plain view doctrine under these circumstances

because the incriminating character of the stereo equipment was not immediately apparent; rather, probable cause to believe that the equipment was stolen arose only as a result of a further search—the moving of the equipment—that was not authorized by a search warrant or by any exception to the warrant requirement.

Id. at 379.

This court has since abided by the Supreme Court's directive: "Dickerson requires the officer conducting a pat-down search have probable cause to believe the item in plain touch is incriminating evidence." Bustos-Torres, 396 F.3d at 944. "To give rise to probable cause, the incriminating character of the object must be immediately identifiable." Id. at 945. "That is to say, the object must be one whose contour or mass makes its identity immediately apparent." Id. (internal quotation marks and citation omitted).

The question thus boils down to whether, at the time of the pat-down search, Cowan's keys were immediately apparent as incriminating evidence. The majority first concludes this standard is met because Detective Canas "immediately recognized the object as keys and the warrant specifically authorized seizing keys as indicia of occupancy or ownership of the premises." Ante, at 5. As astutely articulated by the district court, however, "this overlooks two essential facts: (1) the search warrant did not authorize the officers to search Defendant for the items listed in the search warrant, and (2) the warrant did not authorize the seizure of all keys, but only keys that were indicia of 'occupancy, residency, rental and/or ownership of the premises described herein . . . .'" Suppression Order at 11. Therefore, while the search warrant surely established probable cause to seize certain keys located in Booth's residence, probable cause must still exist to show Cowan's particular keys were indicia of occupancy of the premises. In other words, the judge's probable cause determination via the search warrant did not allow the officers to seize every key found on every person who happened to be in the apartment at the time, much less all the money,

-17-

jewelry, and other ubiquitous items listed in the warrant that would undoubtably be found on the persons of those present. See Ybarra v. Illinois, 444 U.S. 85, 92 (1979) (concluding a search warrant for a premises does not allow the officers to search everyone inside the premises).

From there, the majority concludes the officers had probable cause to believe Cowan was engaged in a common drug trafficking enterprise based on his presence in Booth's apartment, the observation of someone running inside the apartment prior to the officers' entry, and Cowan's Chicago residence, which coincided with the reputed source of the drugs. As an initial matter, there are significant factual distinctions between this case and the majority's cited authority. See Maryland v. Pringle, 540 U.S. 366, 371-73 (2003) (discussing the defendant's presence in a vehicle with two others at 3:16 a.m., with $763 in rolled-up cash in front of the defendant, and five baggies of cocaine accessible by all three men); United States v. Romero, 452 F.3d 610, 617-18 (6th Cir. 2006) (noting the hotel room to which an undercover officer was invited to purchase drugs was registered in the defendant's name, only the defendant and one other individual were present, and the defendant was in the contained area of the room alongside the drugs). Indeed, Romero expressly limited its holding, noting its "analysis would be different had the space involved been of a different size and nature, such as a home or a place of business," which "would increase the likelihood that unwitting and innocent individuals might be present," as is the case here with Booth's apartment. 452 F.3d at 618 n.2.

In any event, the facts recited by the majority still do not establish the keys on Cowan's person discovered by Detective Canas in plain touch were immediately identifiable as incriminating evidence. A review of Detective Canas's testimony demonstrates otherwise. First, by the time Detective Canas felt the keys in Cowan's pocket, Detective Canas had heard Cowan say he had come on a bus from Chicago to visit his brothers and his mother. Suppression Tr. at 79-80. This undercuts the suggestion the keys were of the type in the search warrant because the fact Cowan

-18-

resided in another state indicated the keys were *not* indicia of occupancy of Booth's Davenport residence.  Ultimately, while Cowan *could* have had keys to the residence, this mere possibility did not make it immediately apparent Cowan's keys were to Booth's residence.  Moreover, the fact Chicago was the source city did not, at that time, provide probable cause that Cowan's keys were evidence of a crime.

More importantly, Detective Canas testified he was told during surveillance, prior to executing the search warrant, "there was a vehicle out front that was involved, or that *investigation needed to be done further* to determine whether that vehicle was involved or not."  Id. at 81 (emphasis added).[4]  It bears repeating that if the incriminating character of Cowan's keys was not immediately apparent, and probable cause arose only after a further search, then the seizure of the keys was unlawful. Dickerson, 508 U.S. at 379.  Here, Detective Canas explicitly testified further action was needed to determine the nature of Cowan's keys in light of his knowledge of the vehicle out front: "I told Mr. Cowan that I would be taking the handcuffs off of him until we were able to determine those keys—whether the vehicle keys belonged to a vehicle outside.  I told him if they did not, then he would be free to leave."[5] Suppression Tr. at 90.  Accordingly, it was only after Detective Canas seized Cowan's keys from his pocket, questioned Cowan about why he had keys if he had arrived by bus, examined whether the keys belonged to a Cadillac as asserted by Cowan, and

_____

[4]The majority notes the officers had observed two subjects sitting outside in the vehicles prior to executing the search warrant, but it neglects to mention Cowan was not one of them.

[5]I find it curious Cowan was uncuffed and told he was free to leave so long as his keys did not correspond to a vehicle outside (which happened *after* the drugs were found in the residence) in that the officers apparently did not maintain the high level of suspicion of Cowan ascribed to them by the majority at the time.  However, despite the government's argument to the contrary, I believe this later-acquired fact is irrelevant to our inquiry, which focuses on whether the incriminating nature of the object was immediately identifiable *at the time it was discovered*.  See Bustos-Torres, 396 F.3d at 944.

walked out to the street to determine whether the key fob alerted to a vehicle that Detective Canas determined the nature of the keys.[6]  If squeezing and manipulating an object in someone's pocket to determine its incriminating character was impermissible in Dickerson, 508 U.S. at 378, and moving an object "even a few inches" to get a better view was impermissible in Hicks, 480 U.S. at 325, surely Detective Canas's successive actions to determine the character of Cowan's keys cannot fall within the bounds of the plain touch doctrine.

In sum, even if Detective Canas had a suspicion the keys were involved in drug trafficking, the incriminating nature of the keys was not immediately apparent, and he developed probable cause only after a further search.  See Hicks, 480 U.S. at 334 ("The purpose of the immediately apparent requirement is to prevent general, exploratory rummaging in a person's belongings.") (O'Connor, J., dissenting) (internal quotation marks and citation omitted); United States v. Garcia, 496 F.3d 495, 510 (6th Cir. 2007) ("[A]n object's incriminating nature is not immediately apparent if it appears suspicious to an officer but further investigation is required to establish probable cause as to its association with criminal activity.") (internal quotation marks and citation omitted).  Because Detective Canas's mere touch of the keys in Cowan's pocket did not make it immediately apparent to him the keys were incriminating evidence of criminal activity, the seizure of the keys was unlawful.

In light of my belief Cowan's keys were not immediately identifiable as incriminating evidence, I would not reach the issue of whether the use of the key fob

---

[6]I do not suggest Detective Canas had to know with certainty the true nature of Cowan's keys at the time of the pat-down search.  See United States v. Muhammad, 604 F.3d 1022, 1028 (8th Cir. 2010) ("Probable cause does not require absolute certainty; it only requires that the facts available to a reasonably cautious man would warrant a belief that certain items may be contraband or stolen property or useful as evidence of the crime.") (internal quotation marks and citation omitted).  From the facts available to Detective Canas at the time he felt Cowan's keys, however, it was not immediately apparent the keys were evidence of criminal activity.

constituted a reasonable search or seizure. I would, however, proceed to analyze whether the district court properly excluded the drugs found in Cowan's car and Cowan's post-Miranda statements as fruit of the poisonous tree. Moreover, while I agree with the majority's decision to affirm the suppression of Cowan's statement about why he had car keys if he arrived by bus, I would go further by affirming the suppression of the statement about how Cowan arrived at the apartment. "[A]sking questions about when and how [the defendant] arrived at a household ostensibly linked to a drug sale, as well as his origin, are relevant to an investigation and cannot be described as related only to securing the house or identifying the defendant." United States v. Pacheco-Lopez, 531 F.3d 420, 424 (6th Cir. 2008).

Accordingly, I would affirm the district court's thorough suppression order. Thus, I respectfully dissent.

_____